IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-CT-01284-SCT

*ELWOOD WHITE*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/95 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SHARON HENDERSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 3/25/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/15/99 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Elwood White was arrested for possession of cocaine discovered in his vehicle following the arrest of his passenger/brother for an alcohol violation. He was convicted for possession of cocaine with intent to distribute. On appeal, he asserted that the search was unlawful and the trial improperly denied his motion to suppress. He also challenged the weight and sufficiency of the evidence of "constructive possession".

¶2. The Court of Appeals found that the search was improper and unlawful, but then determined that the search was subject to the exception to the exclusionary rule known as the "inevitable discovery" doctrine established in ***Nix v. Williams***, 467 U.S. 431 (1984) and ultimately affirmed the conviction. This Court granted certiorari review on the issue.

### FACTS

¶3. A city police officer for the City of Crystal Springs, Officer LeFleur, observed two males in the vicinity

of a pick-up truck improperly stopped in a lane of traffic in a public road. Upon stopping to investigate, he found Elwood White sitting on the driver's side of the truck and his brother William White standing near the passenger side of the vehicle. As LeFleur approached the truck, he observed William reach into the bed of the truck and retrieve an open container of alcohol which he tossed into the cab of the truck. Officer LeFleur then proceeded to arrest William for a violation of the city's open container law, and handcuffed him.

¶4. Officer Funches, responding to the scene upon being dispatched to assist, proceeded to deal directly with Elwood White, the appellant, who was still on the driver's side of the vehicle. Officer Funches required the appellant to submit to a *Terry*-type frisk to determine if Elwood possessed a weapon. No weapon was discovered, but he did find some bullets in his shirt pocket. Officer Funchess then elected to conduct a search of the interior of the vehicle and discovered a handgun, the handle of which was in plain view. Based on this discovery, he placed Elwood in handcuffs and returned to the truck to conduct a more thorough search. It was during this second search that he discovered, concealed under a jacket on the passenger side, a medicine bottle which he opened. Inside the bottle, he found what he believed to be crack cocaine. He then arrested Elwood for possession of a controlled substance.[1] It should be noted that the officer admitted at trial on cross-examination that at the time Elwood was handcuffed he had not violated any law. Elwood was ultimately indicted and convicted on the charge of possession of a controlled substance with intent to distribute and sentenced to the maximum thirty years in the custody of MDOC.

## ANALYSIS

¶5. The Court of Appeals found that the search was unreasonable and that probable cause did not exist to search his vehicle for illicit drugs at the time the pill bottle was discovered and seized. However, they went on to determine that this case fit into an exception to the exclusionary rule known as the "inevitable discovery" doctrine, which holds that evidence seized in an unreasonable search may, nevertheless, be admitted if it can be demonstrated that the evidence would, in all likelihood, ultimately have been discovered by constitutionally-permissible means. ***Nix v. Williams**, 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984)*. At trial, Officer Funchess testified as follows:

> Q. Well, be that as it may, Officer Funchess, once you had [Elwood White] in the cuffs, then you and Mr. LeFleur went back to search the vehicle; is that correct?
>
> A. I went back -
>
> Q. The second time.
>
> A. I went back, Officer LeFleur followed. Before Officer LeFleur could actually get over to the other side of the truck, I had saw and had got a pill bottle out of the truck.

¶6. In the *Nix* case, a young girl disappeared from a YMCA facility where she had been attending a sporting event with her family. Nix was seen leaving the facility with a large bundle wrapped in a blanket. One witness reported having seen two small legs protruding from the bundle. Nix's car was found some distance away and some of the child's clothing found therein. Some more clothing was found at a nearby roadside stop and ultimately, a search for the body involving more than two hundred searchers was begun in the area. Nix was improperly coerced into taking a police officer to the body. On ruling on a suppression motion, the U.S. Supreme Court found that even though the police acted improperly in coercing Nix to take

them to the body, the body was discovered in a public area where it would inevitably have been found by the search parties.

¶7. The Court of Appeals opinion fails to explain how the drugs inside a pill bottle inside the passenger compartment of a vehicle underneath a jacket would have been *legally* inevitably discovered, or discovered in a "constitutionally permissible means" in this case. They were not in plain view nor were they in a place of public access. There was no consent to search the vehicle, nor was a warrant obtained. Once the Whites had been handcuffed and secured, the search incident to arrest of either party ended. It was only after both men had been handcuffed and secured that the officer went back to the vehicle without probable cause, without consent, and without a warrant and searched the vehicle, finding the drugs inside a closed bottle which in turn was underneath a jacket.

¶8. This case is controlled by ***Ferrell v. State***, 649 So. 2d 831 (Miss. 1995). In that case, Ferrell was stopped for a speeding violation. It was thereupon discovered that Ferrell's license had been suspended and he was arrested and placed in the patrol car. The officer then claimed that Ferrell asked him to retrieve the keys. The officer found the keys on the passenger seat. Next to the keys he observed a matchbox. He found nothing but matches in the matchbox, but underneath found an unidentified yellow pill. Suspicions aroused, he continued to look about the vehicle discovering yet another matchbox between the two front seats. Inside that matchbox, he found crack cocaine. In that case, the Court said

> The United States Supreme Court has held "that the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement." *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973). In the case of a search incident to arrest, the exception to the warrant requirement is founded upon the reasonable concern that the arrestee might have a weapon on his person or within reach, and that he may attempt to destroy evidence which is within his grasp. *Cupp*, 412 U.S. at 295, 93 S.Ct. at 2003. The search of Ferrell's car cannot be classified as incident to arrest under *Cupp.* At the time Officer Byrd searched the car, Ferrell had already been frisked, handcuffed, and placed in the back-seat of Officer Byrd's patrol car. Consequently, he could have had no reasonable fear that Ferrell might have a weapon. Furthermore, based upon the defendant's behavior and the prior pat-down there was no reason to think that Ferrell might be in a position to destroy incriminating evidence from the crime which led to his arrest, i.e., a suspended driver's license.
>
> * * * *
>
> According to the Fifth Circuit, "a container cannot be opened unless its ***contents*** are in plain view or they can be inferred from the container's outward appearance." *United States v. Sylvester*, 848 F.2d 520, 525 (5th Cir.1988) (emphasis added).
>
> We find, therefore, that the seizure of the contraband from the car Ferrell was driving does not fit the plain view exception. At the time Byrd entered the car, no incriminating evidence was visible. See generally *Wayne R. LaFave and Jerold H. Israel, Criminal Procedure* § 3.2(b) (1984) (discussing plain view doctrine and requirement that contraband be "immediately apparent"). Nevertheless, he proceeded to lift the matchbox in search of contraband. Moreover, Byrd was not content after he discovered that the first matchbox contained matches, but continued the search and opened the second matchbox. Given their utility and wide availability, matches are common objects in the every

day world. The mere presence of a matchbox on the front seat of a car ordinarily cannot be termed an incriminating object in plain view.

*Id.* at 833-834.

¶9. Even assuming arguendo that Elwood had been legally arrested, the improper search in this case is indistinguishable from the *Ferrell* case and the "inevitable discovery" doctrine simply has no application as there was no valid underlying reason for the officers to return to the truck after the Whites had been secured and conduct the search which resulted in the discovery of the drugs inside the medicine bottle. In any event, the burden of showing that this case fits into such an exception to the exclusionary rule and advancing proof thereon is on the State. See *Stringer v. State,* 491 So.2d 837, 843 (Miss. 1987) (Robertson J. concurring, joined by Prather and Sullivan, JJ.). In this case, the State never asserted the "inevitable discovery" doctrine at trial or on appeal and quite obviously never offered any proof in support thereof.

¶10. We hold that the search in this case was improper and unlawful. The evidence obtained thereby was "fruit of the poisonous tree" and therefore inadmissible. Without this evidence, the conviction can not stand.

## CONCLUSION

¶11. Inasmuch as the unlawful search in this case requires that the conviction be reversed and rendered, it is unnecessary to discuss the other issues asserted in the direct appeal or the Petition for Writ of Certiorari.

¶12. **REVERSED AND RENDERED. APPELLANT DISCHARGED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. McRAE, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, DISSENTING:**

¶13. The case *sub judice* presents this Court with difficult task of determining whether police officers conducted a constitutionally permissible search of an arrestee's automobile. The Majority holds that the search was unlawful and such unlawfulness is not cured by the "inevitable discovery" doctrine. Maj. Op. at 6. Because I think that the "inevitable discovery" doctrine applies to the unique facts presented here, I respectfully dissent.

¶14. To examine this issue, *inter alia*, this Court granted White's Petition for Writ of Certiorari. The Court of Appeals of Mississippi found that the "inevitable discovery" doctrine applied and reasoned as follows:

> We conclude, on these facts, that it is entirely reasonable to conclude that the arresting officer, Officer LeFleur, was proceeding with those duties normally associated with an arrest, including preparations to conduct a thorough search of the inside of the truck within William White's immediate control at the

time of his arrest. This would have been a constitutionally permissible search incident to William White's lawful arrest.

Court of Appeals' Opinion at 9.

¶15. In reversing the Court of Appeals, the Majority writes, " . . . the improper search in this case is indistinguishable from the Ferrell case and the 'inevitable discovery' doctrine simply has no application as there was no valid underlying reason for the officers to return to the truck after the Whites had been secured and conduct the search which resulted in the discovery of the drugs inside the medicine bottle." Maj. Op. at 6. In my view, *Ferrell v. State*, 649 So.2d 831 (Miss. 1995), is distinguishable and an underlying reason for the officers to return and conduct the search did in fact exist.

¶16. In *Ferrell*, the police stopped Ferrell for a traffic violation. Upon discovering Ferrell had a suspended driver's license, he was arrested and placed in the patrol car. Claiming Ferrell asked him to retrieve his keys, the officer returned to the car and found a matchbox beside the keys. His suspicions now aroused, he proceeded to search the car thoroughly and found another matchbox containing the illegal crack cocaine for which he was convicted. *Id.* at 832.

¶17. On appeal, this Court held that the search of Ferrell's car cannot be classified as incident to arrest under *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973). *Id.* at 833. This Court based its determination on the following facts:

> At the time Officer Byrd searched the car, Ferrell had already been frisked, handcuffed, and placed in the back-seat of Officer Byrd's patrol car. Consequently, he could have had no reasonable fear that Ferrell might have a weapon. Furthermore, based upon the defendant's behavior and the prior pat-down there was no reason to think that Ferrell might be in a position to destroy incriminating evidence from the crime which led to his arrest, i.e., a suspended driver's license.

*Id.*

¶18. In the case *sub judice*, the facts are similar, but not indistinguishable. Officer LeFleur was the first to arrive on the scene of the improperly stopped truck in a lane of traffic. He noticed Elwood White, the appellant, sitting on the driver's side and William White standing on the passenger side. William was arrested by LeFLeur for a violation of an open container of alcohol law and handcuffed. Maj. Op. at 2.

¶19. Officer Funches arrived on the scene just after LeFleur, and he dealt directly with Elwood. Upon a *Terry* frisk, Funches found bullets in the shirt pocket of Elwood. Officer Funches then elected to search the interior of the truck and discovered a handgun, the handle of which was in plain view. *Id.* Funches then arrested Elwood, placed him in handcuffs, and then returned to the truck to conduct a more thorough search. During this second search, Funches found the medicine bottle containing the crack cocaine for which Elwood was ultimately convicted of possessing. *Id.*

¶20. This case is factually distinguishable from *Ferrell* in that actual weapons and bullets were found on the body and in the truck of the appellant. No weapons were ever involved in the *Ferrell* case. Moreover, the underlying reason for the officers's return is understandable. The second search that discovered the illegal contraband could easily have been predicated upon the officer's belief that other weapons were in the truck. Funches had already found one handgun and the appellant with a pocket full of bullets. In effect, the Majority seeks to punish law enforcement for simply being safe in the face of dangerous circumstances.

Law enforcement officers should not be penalized for properly placing a suspect, who has committed a traffic violation and is found carrying a handgun, under arrest and securing him a police vehicle before continuing their search for other weapons. An officer who did otherwise is risking life and limb.

¶21. Therefore, the "inevitable discovery" doctrine applies just as the Court of Appeals reasoned. Funches was proceeding with those duties normally associated with an arrest. This was a constitutionally permissible search incident to Williams and Whites lawful arrest. The contraband would have been discovered in the initial search, but for discovery of the weapons and bullets. The necessity of safety in the face of grave danger required Funches to first secure the appellant before turning his back to continue the search.

¶22. Accordingly, I respectfully dissent.

**MILLS, J., JOINS THIS OPINION.**


1. The cocaine found was determined to be 1.2 grams or .04 (4/100's) oz. While the officers found $79.00 in cash on Elwood, no scales, or paraphernalia were apparently recovered as none were offered as evidence.