915 So.2d 1132 (2005)
Adam Wayne ROEBUCK, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01601-COA.
Court of Appeals of Mississippi.
December 6, 2005.
*1134 John R. McNeal, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
BARNES, J., for the Court.
¶ 1. The appellant's motion for rehearing is granted. The original opinion is withdrawn and this opinion is substituted therefor.
¶ 2. A jury sitting before the Circuit Court of Leake County found Adam Wayne Roebuck guilty of possession of precursor drugs with the intent to manufacture crystal methamphetamine, in violation of Section 41-29-313(1)(a)(i) of the Mississippi Code Annotated (Rev.2001). The circuit court sentenced Roebuck to serve a ten-year sentence in the custody of the Mississippi Department of Corrections. Although Roebuck filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, the circuit court denied those motions. Aggrieved, Roebuck *1135 appeals and asserts: (1) that the circuit court erred in denying his motion to suppress evidence based on a lack of probable cause for the issuance of a search warrant; (2) that the court erred in denying his motion for directed verdict, or in the alternative, JNOV, because the evidence against him was insufficient to sustain a guilty verdict; and (3) that the court erred by failing to grant a mistrial. We find that the trial court erred in denying Roebuck's motion to suppress, as the search warrant was invalid for lack of probable cause. As a result, the evidence obtained pursuant to the warrant must be suppressed as the "fruit of the poisonous tree." Because the remaining evidence is legally insufficient to sustain Roebuck's conviction, we find that the trial court erred in denying Roebuck's motions for directed verdict and JNOV. As we reverse and render the ruling of the circuit court and discharge Roebuck from custody, we need not reach Roebuck's third assignment of error.

SUMMARY OF FACTS
¶ 3. On June 6, 2001, a confidential informant placed telephone calls to Agent Jimmie Nichols of the Mississippi Bureau of Narcotics and Deputy Investigator Mark Wilcher of the Leake County Sheriff's Office. The confidential informant reported that he had been at Adam Roebuck's residence and had seen methamphetamine inside Roebuck's house. The confidential informant also reported that he had observed Roebuck and another individual using methamphetamine as well as preparing, or "cooking," methamphetamine.
¶ 4. Determined to secure a warrant to search Roebuck's house, Nichols prepared an affidavit, supplemented with a description of underlying facts and circumstances. Afterwards, Nichols and Wilcher went before Judge Ruby Graham of the Leake County Justice Court. Nichols presented his affidavit and underlying facts and circumstances sheet to Judge Graham, and Wilcher offered oral testimony. Satisfied that probable cause for a search warrant existed, Judge Graham issued a search warrant, which authorized Nichols and Wilcher to search Roebuck's residence. Armed with the search warrant, Nichols and Wilcher, among others, executed the search warrant approximately three to four hours after receiving contact from the confidential informant.
¶ 5. Roebuck was at home when Nichols and Wilcher executed the search warrant. In their search of the property, the agents found a trace amount of ephedrine or pseudoephedrine on some coffee filters, a box of salt, and several empty lithium battery casings, indicating that the lithium had been stripped from the batteries. No lithium was found on Roebuck's property, however. Additionally, the record shows that pursuant to the warrant, Nichols obtained an imprint of Roebuck's fingerprints. Roebuck was not arrested at the time of the search, as investigators did not uncover sufficient evidence to give rise to criminal charges against him.
¶ 6. However, shortly after Nichols and Wilcher arrived at Roebuck's house, they heard a four-wheeler leave from somewhere around Roebuck's mobile home. Although authorities tried to pursue the four-wheeler, the unknown driver cut through some woods and a pasture and went out of their sight. Roebuck was not the driver, as he was on the property during the search.
¶ 7. When they failed to apprehend the anonymous driver of the four-wheeler, Wilcher and Agent Joey Mayes of the Mississippi Bureau of Narcotics opted to travel to another location. Wilcher stated that he had been contacted by an individual who reported that four-wheelers traveled *1136 from Roebuck's property to another property "at all hours of the day." According to trial testimony, that third-party property was tied up in an estate. Wilcher reported that he had obtained permission from "someone involved with the estate" to enter the estate property. Wilcher never attempted to obtain a warrant to search the estate property. The "estate property" was in the opposite direction of the four-wheeler flight.
¶ 8. During Wilcher's and Mayes's search of the estate property, they discovered a "clandestine methamphetamine lab." They found a small bag, closed with a zipper. Six cans of Warren Premium Starter Fluid were inside that bag. Starter fluid contains ethyl ether, a precursor to the manufacture of methamphetamine. Miss.Code Ann. § 41-29-313(1)(b)(i) (Rev.2001). Authorities also found two tanks of anhydrous ammonia and a green plastic box of the type commonly used to store tools or fishing tackle. Inside the green box were lithium batteries, a pack of coffee filters, and 98.6 grams of powdered ephedrine. Anhydrous ammonia, ephedrine, and lithium are all precursors to the manufacture of methamphetamine. Miss.Code Ann. § 41-29-313(1)(b)(ii),(v), and (vii) (Rev.2001).

PROCEDURAL HISTORY
¶ 9. The Grand Jury of Leake County returned an indictment against Roebuck on January 8, 2003. Roebuck waived arraignment and pled not guilty. On April 28, 2003, Roebuck filed a motion to compel disclosure of the confidential informant who contacted Nichols and Wilcher. Roebuck also filed a motion to suppress the evidence against him. In his motion to suppress, Roebuck argued that the underlying facts and circumstances portion of Nichols's affidavit did not contain a statement of reliability or a statement that the particular confidential informant had furnished reliable information in the past or was known to be reliable. Roebuck asked the circuit court to conclude that the affidavit was, therefore, issued without probable cause as it did not establish or corroborate the credibility of the confidential informant who contacted Nichols and Wilcher.
¶ 10. The day before trial, Roebuck's counsel filed a motion to dismiss or, in the alternative, a motion in limine. Roebuck asked the circuit court to dismiss the case because the State failed to produce the identity of one of the confidential informants, and argued that the State was required to produce that information according to URCCC 9.04. Alternatively, Roebuck moved to suppress all of the evidence originating from both Roebuck's property and the property upon which the methamphetamine laboratory was found. The circuit court denied Roebuck's motions, and the matter went to trial.
¶ 11. After the State presented its case in chief, Roebuck entered an unsuccessful motion for a directed verdict. Following the circuit court's denial of that motion, Roebuck rested his case, and the jury proceeded to find him guilty. After trial, Roebuck filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial. The circuit court denied his motion, and Roebuck now brings his grievances before this Court.
I. WHETHER THE CIRCUIT COURT ERRED AS A MATTER OF LAW BY DENYING ROEBUCK'S MOTION TO SUPPRESS EVIDENCE BASED ON A LACK OF PROBABLE CAUSE FOR THE ISSUANCE OF A SEARCH WARRANT.
II. WHETHER THE CIRCUIT COURT ERRED BY FAILING TO GRANT ROEBUCK'S MOTION FOR A DIRECTED VERDICT OR, IN THE *1137 ALTERNATIVE, JUDGMENT NOTWITHSTANDING THE VERDICT.

STANDARD OF REVIEW
¶ 12. In reviewing a finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the determination of probable cause. Smith v. State, 504 So.2d 1194, 1196 (Miss.1987). "In making our review, this Court looks both to the facts and circumstances set forth in the affidavit for search warrant and as well, the sworn oral testimony presented to the issuing [judge]." Petti v. State, 666 So.2d 754, 758 (Miss.1995).
¶ 13. Similar to the Fourth Amendment to the United States Constitution, article 3, section 23 of the Mississippi Constitution dictates that the government is prohibited from searching a citizen's home unless it first obtains a search warrant after demonstrating probable cause. U.S. Const. amend. IV; Miss. Const. art. 3, § 23; Simmons v. State, 805 So.2d 452, 481-82(¶ 60) (Miss.2001). The information necessary to establish probable cause "must be information reasonably leading an officer to believe that, then and there, contraband or evidence material to a criminal investigation would be found." Petti, 666 So.2d at 757. A demonstration of probable cause is sufficient where facts and circumstances, of which an officer has reasonably trustworthy information, should justify a man of average caution to believe that a crime has been committed and that a particular person committed it. Id.
¶ 14. Under the "totality of the circumstances" test, a written affidavit supplemented by oral testimony of police officers can establish a "substantial basis" for a determination that probable cause existed for the issuance of a search warrant. Id. at 758; see also Miss. Unif. R.P.J.C. 3.03 (stating that a justice court judge can issue a search or arrest warrant only after determining that probable cause exists based on an affidavit or other evidence before the court). However, simply repeating an informant's allegation, without more, does not overcome the threshold requirements for probable cause.
¶ 15. While an affidavit may rely on information gleaned from an informer's report that is not within the personal knowledge of the affiant, an affidavit must present a substantial basis for crediting that hearsay. U.S. v. Satterwhite, 980 F.2d 317, 321 (5th Cir.1992). That substantial basis has been overcome where the affidavit contains a statement that an officer has successfully used a confidential informant to prosecute criminal allegations in the past. Id. Similarly, it is sufficient where an affidavit contains corroborating evidence to show a confidential informer is truthful and reliable. Id. Where a request for a search warrant relies on information relayed by a confidential informant, probable cause for the issuance of a search warrant exists where law enforcement independently corroborates a confidential informer's statements. The common factor is that, by affidavit or oral testimony, law enforcement must present an issuing judge with some "indicia of veracity or reliability" supporting the confidential informant's allegation. State v. Woods, 866 So.2d 422, 426-27(¶ 14) (Miss.2003).

ANALYSIS
¶ 16. Roebuck claims that the trial court, by denying his motion to suppress evidence, violated his constitutional right of freedom from unreasonable searches and seizures. Roebuck argues that Judge Graham should not have issued the search warrant because the evidence was insufficient *1138 to convey probable cause. Particularly, Roebuck contends that the affidavit in support of the search warrant lacked indicia of reliability as it did not demonstrate corroborating evidence showing that the informant was truthful and reliable. Specifically, Roebuck argues that law enforcement did not find the evidence that the informant claimed would be present at Roebuck's house. Roebuck reasons that, accordingly, no indicia of reliability or veracity was included in the affidavit or presented orally. Roebuck concludes that evidence seized as a result of the alleged improper search warrant should have been suppressed as the fruit of the poisonous tree. Accordingly, this Court must resolve whether the issuing justice court judge had sufficient evidence of probable cause for issuance of the search warrant.
¶ 17. Nichols prepared an affidavit and the accompanying facts and circumstances sheet. The underlying facts and circumstances contained the following:
Agent Nichols spoke with a confidential source who stated that he/she had been to a residence belonging to Adam Roebuck, a known drug violator. This informant stated that He/She had observed the strong smell of ether, a chemical used to manufacture methamphetamine. This informant stated that Adam Roebuck and Brent White were both at the residence cooking methamphetamine. This informant also stated that methamphetamine was being stored inside this residence for personal consumption as well as for distribution. This informant also stated that another known drug violator had departed the residence enroute to Jackson with a quantity of Methamphetamine. Deputy Mark Wilcher also received information on this same date from a concerned citizen that he/she was concerned about persons using, distributing and concealing narcotics at this residence. This citizen stated that persons, alleged drug violators, were in and out of this location all hours of the day and night. This citizen also stated that these persons had been around this residence this morning. Agents and Deputies have received numerous complaints about Adam Roebuck manufacturing and distributing methamphetamine from this residence.
The confidential source also stated that he/she had personal knowledge that Adam Roebuck was distributing methamphetamine from this residence and that Adam Roebuck was concealing a quantity of methamphetamine at the residence at this time.
Agent Nichols has been working narcotics in this area for several years and has had an opportunity to investigate Adam Roebuck for the distribution of narcotics. Agent Nichols personally purchased narcotics from Roebuck in an undercover operation. Brent White has also been identified by fingerprint comparisons as being a suspect in another methamphetamine production case in Leake County, Mississippi.
Due to the above mentioned facts and circumstances MBN Agent Jimmie Nichols has good reason to believe and does believe that Adam Roebuck and Brent White are manufacturing methamphetamine at this residence at this time.
¶ 18. However, during the hearing on Roebuck's motion to suppress, Nichols admitted that he did not mention that his confidential informant was credible or believable or that the informant had provided credible information in the past in the affidavit or the underlying facts and circumstances sheet that he presented to Judge Graham. Because sworn testimony indicates that the affidavit did not contain any corroborating evidence indicating that *1139 the confidential informant was truthful and reliable, the affidavit, alone, does not support a finding that probable cause existed for issuance of the search warrant. See Woods, 866 So.2d at 426-27(¶ 14).
¶ 19. Wilcher also presented oral testimony to Judge Graham during the request for a search warrant. During the hearing on the motion to suppress, Wilcher discussed the oral testimony he offered to Judge Graham. Wilcher testified that he told Judge Graham that he had information from two confidential informants. The first confidential informant told Wilcher that he observed drug activity at Roebuck's house; the second confidential informant told Wilcher that four-wheelers traveled on the estate property upon which the clandestine meth lab was found. At no point did Wilcher mention telling Judge Graham that either confidential informant was truthful and reliable or that the informant had aided in the successful prosecution of criminal investigations. Wilcher did not request a search warrant to search the estate property, but relied on estate consent.
¶ 20. Judge Graham testified at the hearing on the motion to suppress. Judge Graham, reading from the affidavit and the underlying facts and circumstances, stated that the affidavit said "the affiant has good reason to believe and does believe that certain things happened." Judge Graham also conceded that the affidavit does not mention the reliability of the confidential informant.
¶ 21. During arguments at the hearing, Roebuck argued that neither Wilcher nor Nichols had any first-hand information regarding crimes committed at Roebuck's house. Further, Roebuck argued that any information the authorities had was relayed through a confidential informer. Roebuck stated that, under those circumstances, the law requires reasonably trustworthy information before probable cause arises. Roebuck claimed that because Judge Graham had no proof that the informant was trustworthy or reliable, the information before her did not meet the standards for the issuance of a search warrant.
¶ 22. The State argued that there is nothing magical about the word "reliable," and that the word "reliable" does not have to appear in an affidavit and underlying facts and circumstances for a search warrant to be valid. The State noted that independent corroboration of the informant's report is also a valid method to develop reliability. The State argued that the first informant's report was corroborated when Wilcher received additional information from another informant supporting the first informant's report.
¶ 23. The circuit court determined that there were five sources of information that created a "totality of circumstances" making the search warrant proper. The circuit court stated:
Now, looking at the underlying facts and circumstances, it  and as to what Judge Wilcher had  Judge Graham had before her on that date in June, it looks like there were about five sources of information that she could rely on.
Mr. Nichols, in the first paragraph, he alludes to his experience. He's been in law enforcement 12 years, and seven years in narcotics, particularly. And he also talks in that paragraph about dealing with informants over that period of time.
Then, item number two, we have the underlying facts and circumstances supplemented by Deputy Mark Wilcher, who he says  and he testified before Judge Graham  that he had also received the information that Jimmie Nichols had received and he elaborated *1140 on this before her as he gave certain testimony.
Then thirdly, we have the testimony hearsay testimony of concerned citizens, that they had seen the comings and goings and the possible unlawful activity.
Then you have the agents and deputies who have received numerous complaints about the Defendant manufacturing and distributing methamphetamine. And finally, Agent Nichols, in his last paragraph, and I guess this should be the final sealer of it all, he states, and I quote: "have been working in narcotics in this area for several years and have had an opportunity to investigate Adam Roebuck for the distribution of narcotics."
Agent Nichols personally purchased narcotics from Roebuck in an undercover operation and then he mentions another person, Brent White.
So, as I am reviewing this  as reviewing Court as to what Judge Graham did back in June of 2001, I look at all of these sources of information, and then I plug those into the legal words  the totality of the circumstances  and I am convinced that there was no deficiency, as far as the lack of the word "reliability."
The Judge looked at all of these facets. She determined that there was trustworthiness of the two  of the affiant and the  Deputy Wilcher, and for those reasons, she issued the warrant.
So the Court finds that the motion is not well taken and the motion is overruled and the warrant stands.
¶ 24. However, Judge Graham was not required to determine the trustworthiness of Nichols and Wilcher. This Court does not doubt their trustworthiness or credibility. Because law enforcement must present an issuing judge with some indicia of veracity or reliability supporting the confidential informant's allegation, Judge Graham should have withheld the search warrant unless Nichols and Wilcher overcame that burden. See Woods, 866 So.2d at 426-27(¶ 14).
¶ 25. Because nothing in the record before this Court suggests that Nichols or Wilcher presented any basis of reliability on the informer's statement or any suggestion of the veracity of it, the motion to suppress should have been granted. It should be clear that we do not find fault due to lack of the word "reliable" in the affidavit or underlying facts and circumstances. We find fault in the search warrant because nothing before Judge Graham suggested that the informant's information was reliable or true. Further, none of the methods of demonstrating veracity or reliability were before Judge Graham.
¶ 26. In our original opinion, we recognized the invalidity of the search warrant for Roebuck's house, but nonetheless affirmed his conviction. Our reasoning was that, while the search of Roebuck's home did not uncover sufficient evidence to charge him with a crime, the search of the estate property provided evidence conclusively linking Roebuck to the clandestine methamphetamine lab. However, in his motion for rehearing, Roebuck brought to our attention that fingerprint exemplars taken pursuant to the invalid search warrant provided the only means by which the State could connect him to the methamphetamine lab. In our previous opinion, we held that the evidence seized pursuant to the illegal search warrant must be suppressed as the fruit of the poisonous tree; we specifically referred to the coffee filter containing a trace of pseudoephedrine as evidence that should rightly have been suppressed. However, as it has become *1141 clear that fingerprint exemplars were taken from Roebuck pursuant to the invalid search warrant, we must also suppress those exemplars.[1]See Woods, 866 So.2d at 427(¶ 16).
¶ 27. In denying Roebuck's motion for JNOV, the circuit judge stated that a fingerprint found on a bag of coffee filters at the estate property was "the vital link" connecting Roebuck to the possession of precursor chemicals. In the State's case in chief, the State's fingerprint expert testified that in order to identify Roebuck as the owner of the print on the bag, he compared it with the fingerprint card taken from Roebuck when agents Nichols and Wilcher executed the search warrant. In the absence of the fingerprint card, the State would have had no evidence linking Roebuck to the clandestine lab, and thus would not have been able, as a matter of law, to meet its burden of proof. Therefore, Roebuck's trial motions for a directed verdict of not guilty and JNOV should have been granted.
¶ 28. The United States Supreme Court held in Burks v. State, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), that the Double Jeopardy Clause of the United States Constitution precludes a second trial when a reviewing court has found the evidence against a criminal defendant legally insufficient. Thus, finding the evidence against Roebuck legally insufficient after suppression of the fruits of the illegal search warrant, this Court is not at liberty to reverse and remand for a new trial. In such an instance, "[T]he prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." Id. at 16, 98 S.Ct. 2141 (internal page numbers omitted). In White v. State, 735 So.2d 221 (Miss.1999), the Mississippi Supreme Court determined that when, as a result of the suppression of evidence obtained illegally, the evidence against the accused cannot sustain a conviction, the proper remedy is to reverse and render. See id. at 224(¶ 10). Accordingly, we must do the same.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] Given the opportunity to respond to Roebuck's motion for rehearing, the State did not argue that prosecutors would have had another source of Roebuck's fingerprints, so as to justify our application of the independent source or inevitable discovery exceptions to the fruit of the poisonous tree doctrine.