RUSSELL, J.,
for the Court:
¶ 1. A jury in the Neshoba County Circuit Court convicted Lewis Thompson of possession of methamphetamine (Count I) and possession of precursor chemicals with intent to manufacture methamphetamine *694 (Count II). He was sentenced to sixteen years without the possibility of parole, suspension, probation or reduction on Count I and sixty years without the possibility of parole, suspension, probation or reduction on Count II. The circuit court ordered the sentences to run concurrently. Thompson asserts four issues on appeal: (1) whether there was sufficient probable cause to issue a search warrant; (2) whether the circuit court erred in admitting his confession into evidence; (3) whether the verdict was against the overwhelming weight of the evidence on Count II; and (4) whether the oral or written sentencing order controls. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. On July 20, 2008, Sheriff Donnie Adkins received information from a confidential informant that methamphetamine was being manufactured, used, and sold at the home of Buddy Smith located at 10671 County Road 238, Union, Mississippi, at the second trailer on the right on Road 238. According to the confidential informant, Smith and Thompson were manufacturing methamphetamine in the woods behind the trailer. Sheriff Adkins testified that this confidential informant had provided credible information in the past, leading to arrests and convictions. Based on the information obtained from the confidential informant, Sheriff Adkins prepared a search warrant, affidavit, and supporting underlying facts and circumstances, and presented this information to justice court judge Steve Cumberland for his review and signature. Judge Cumberland reviewed all three documents, found that there was sufficient probable cause for the issuance of a search warrant, and signed the warrant the same day.
¶ 3. Sheriff Adkins and several other officers served the search warrant later that evening at approximately 6:31 p.m. Upon arrival, several adults and children were located on the premises, and Thompson was behind the trailer working on a car. Sheriff Adkins and Deputy Ken Spears approached Thompson, while other officers secured the scene. The other officers discovered two active methamphetamine labs in the woods behind a shed. After the meth labs were discovered, Sheriff Adkins gave Thompson his Miranda warnings with Deputy Spears present. According to Sheriff Adkins, Thompson did not appear to be under the influence of drugs or alcohol at the time, and Thompson acknowledged that he understood his rights. After Thompson waived his Miranda rights, he showed Sheriff Adkins a black valve containing three small bags of methamphetamine by the shed. Next, Thompson told Sheriff Adkins that there was some methamphetamine on tinfoil inside the shed, which was recovered by Sheriff Adkins. Finally, Thompson directed Sheriff Adkins to Thompson’s truck where a bag of methamphetamine lay inside Thompson’s ball cap on the front seat of the truck. Thompson admitted to Sheriff Adkins that the three bags in the black valve, the methamphetamine on the foil, and the methamphetamine in the ball cap were “his share” of the methamphetamine for “personal use.” Sheriff Adkins also testified that Thompson admitted to doing the “cooking” with Smith:
Q: Now, you had already found what you believed to be an active meth lab. Is that correct?
A: Yes, sir, it was in operation.
Q: Did you inquire of the defendant at all about what you believed to be the lab?.
A: I asked him who was doing the cooking of the meth, and he said that he and Buddy Smith were doing the cooking.
*695 Q: So he claimed responsibility for the making of the methamphetamine also.
A: Yes, sir.
¶ 4. Agent Kevin Gregory and Agent Grant Myers testified that they discovered two active meth labs along with several ingredients used to make methamphetamine inside a camouflaged cooler. Specifically, they found cold medicine (ephedrine), icee hot (ammonium nitrate), drain cleaner (sodium hydroxide), liquid fire (sulfuric acid), and camp fuel (hexanes, hep-tanes). The agents also testified that they wore suits for protection as they allowed the meth to finish cooking for safety reasons. They also took samples and sent them to a crime laboratory for testing.
¶ 5. Keith McMahan works for the Mississippi Crime Laboratory and testified that he personally tested the samples from the scene. He stated that there was approximately 1.1 grams of methamphetamine total.
¶ 6. The jury returned a guilty verdict on Count I, possession of methamphetamine, and Count II, possession of precursor chemicals. At the sentencing hearing, the circuit court orally sentenced Thompson to eight years for Count I and twenty-five years for Count II, with the sentences to run consecutively. Later, the circuit court entered a written order sentencing Thompson to sixteen years for Count I and sixty years for Count II, to run concurrently, finding Thompson was a second offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev.2009). Thompson timely appealed.
DISCUSSION
I. Whether there was sufficient probable cause to issue the search warrant.
¶ 7. “In reviewing a finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the determination of probable cause.” Roebuck v. State, 915 So.2d 1132, 1137 (¶ 12) (Miss.Ct.App.2005) (citing Smith v. State, 504 So.2d 1194, 1196 (Miss.1987)). Further, “this Court looks both to the facts and circumstances set forth in the. affidavit for [the] search warrant and ... the sworn oral testimony presented to the issuing judge.” Id. (citing Petti v. State, 666 So.2d 754, 758 (Miss.1995)). “On appeal, the issuance of a warrant will not be reversed where substantial evidence supports the [trial judge’s] determination that probable cause existed.” Phinizee v. State, 983 So.2d 322, 328 (¶ 18) (Miss.Ct.App.2007) (citing McNeal v. State, 617 So.2d 999, 1007 (Miss.1993)).
¶ 8. “A search warrant is validly issued when based upon probable cause.” Phinizee, 983 So.2d at 328 (¶ 18) (citing Zinn v. City of Ocean Springs, 928 So.2d 915, 920 (¶ 11) (Miss.Ct.App.2006)). Our supreme court has stated the following regarding probable cause:
Probable cause is a practical, nontechnical concept, based upon the conventional considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer’s knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
Strode v. State, 231 So.2d 779, 782 (Miss.1970). Stated simply, “probable cause means more than a bare suspicion but less than evidence that would justify condemnation.” State v. Woods, 866 So.2d 422, 426 (¶ 11) (Miss.2003).
*696 ¶ 9. “Under Mississippi law, probable cause is determined by assessing the ‘totality of the circumstances.’ ” Phinizee, 983 So.2d at 328 (¶ 18) (citing Rooks v. State, 529 So.2d 546, 554 (Miss.1988)). “Probable cause exists where it is based on ‘information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found.’” Id. (quoting Rooks, 529 So.2d at 555).
¶ 10. Search warrants, like arrest warrants, “shall be issued only by the judge after a judicial determination that probable cause exists based upon the affidavit or other evidence before the court.” Woods, 866 So.2d at 425 (¶ 10) (citing Miss. Unif. R.P.J.C. 3.03). Under the totality-of-the-circumstanees test, “[t]he task of the issuing magistrate is simply to make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him, including the ‘veracity’ and the ‘basis of the knowledge’ of persons supplying hearsay information.” Id. (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Veracity may be established by a statement of the affiant that a confidential informant has given credible information in the past. Woods, 866 So.2d at 426 (¶ 14); United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir.1992).
¶ 11. In the instant case, Sheriff Adkins submitted underlying facts and circumstances to support the issuance of the search warrant:
Affiant, Donnie Adkins[,] has been in law enforcement since 1984 and has been an [i]nvestigator with the Neshoba County Sheriffs Department and with the Philadelphia Police Department for a total o[f] 12 years. Donnie [Adkins] had been Justice Court Judge in Nesho-ba County for 11 years and is currently Sheriff of Neshoba County. Donnie Adkins is a certified law enforcement officer, and a graduate of the Laurel Police Training Academy, and [has] attended numerous schools on the subject of criminal investigations, and [has] effected numerous felony arrests.
The affiant states the following facts to wit.
On Sunday[,][the] 20th day of July 2008[,] a confidential informant that is known to Donnie Adkins and has given creditable information in the past told Donnie [Adkins] that he/she saw [m]eth-amphetamine being manufactured and for sale and being used at 10671 Road 238[,] Union, MS 39365, 2nd trailer on the right on Road 238 coming from [C]ounty Road 311 in Neshoba County. Informant stated that Buddy Smith and Lewis Thompson were the ones manufacturing the [m]ethamphetamine in the woods behind the trailer. This residence is controlled and occupied by Buddy Smith. On Sunday[,] July 20th[,] 2008[,] Sheriff Donnie Adkins began preparing an Affidavit for Search Warrant, Search Warrant, with supportive Underlying Facts and Circumstances, this all being within the past 24 hours.
It is based on these facts that your affiant respectfully requests a search warrant be issued for this residence at 10671 Road 238[,] Union, MS 39365, 2nd trailer on right on [C]ounty [R]oad 238 coming from [C]ounty [R]oad 311 in Neshoba County to include all outbuildings and vehicles.
This document was signed by Sheriff Adkins and Judge Cumberland on July 20, 2008. Further, Sheriff Adkins testified that the confidential informant had provided reliable information in the past, which had led to arrests and convictions. Thompson moved to suppress the search warrant. At the suppression hearing, af *697 ter hearing testimony from Sheriff Adkins, the circuit court ruled as follows:
In this particular case, Sheriff Adkins states that the confidential informant— he says that he has [provided] confidential information in the past and that the confidential informant saw methamphetamine being manufactured and methamphetamine being for sale[,] and methamphetamine was being used at that address. He says that the two [defendants in that case, Smith and Thompson, were the ones manufacturing the methamphetamine in the woods behind the trailer leading certainly to the statement that they saw it being manufactured in [the] woods by these two [defendants. He states that the residence was controlled by Buddy Smith. I’m going to overrule the objection. It’s my opinion that even based upon the Roebuck case, that this affidavit has enough to establish probable or reasonable cause. The [s]upreme [c]ourt in that case stated that the information necessary to establish probable cause to issue a search warrant must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found. Certainly from the statements that he saw methamphetamine being manufactured; that he saw methamphetamine being for sale; that he saw methamphetamine being used; and that he saw it being manufactured in [the] woods behind the trailer is sufficient to establish reasonable cause or probable cause for the issuance of the search warrant.
¶ 12. Upon review, we find that there was substantial evidence to support the justice court judge’s finding of probable cause to issue the search warrant. Under the totality of the circumstances, we find sufficient evidence to support a finding that methamphetamine was being used and manufactured at Smith’s residence. Therefore, this issue is without merit.
II. Whether the circuit court erred in admitting Thompson’s confession into evidence.
¶ 13. Thompson argues that he was illegally arrested, and as a result, his confession should have been inadmissible under the fruit-of-the-poisonous-tree doctrine. However, Thompson fails to argue how or why his arrest was illegal. Under Mississippi Rule of Appellate Procedure 28(a)(6), “[t]he argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” Thompson fails to state any reason for his contention that he was illegally arrested, and he fails to cite any portions of the record on this point. Therefore, his argument is procedurally barred. See Martin v. State, 43 So.3d 533, 535 (¶ 10) (Miss.Ct.App.2010).
III. Whether the verdict is against the overwhelming weight of the evidence on Count II, possession of precursor chemicals with the intent to manufacture methamphetamine.
¶ 14. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). A motion for new trial “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily *698 against the verdict.” Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)). Further, “the evidence should be weighed in the light most favorable to the verdict.” Id.
¶ 15. Thompson does not dispute his possession-of-methamphetamine conviction since he admitted the methamphetamine was his. He instead argues his conviction of possession of precursor chemicals with the intent to manufacture methamphetamine was against the overwhelming weight of the evidence because he “had no ownership or dominion over the realty on which the precursors were found and made no admissions about it being his.” However, Sheriff Adkins testified that Thompson admitted “cooking” the methamphetamine:
Q: Now, you had already found what you believed to be an active meth lab. Is that correct?
A: Yes, sir, it was in operation.
Q: Did you inquire of the defendant at all about what you believed to be the lab?
A: I asked him who was doing the cooking of the meth, and he said that he and Buddy Smith were doing the cooking.
Q: So he claimed responsibility for the making of the methamphetamine also.
A: Yes, sir.
¶ 16. Further, officers recovered several precursor drugs and chemicals, including cold medicine (ephedrine), icee hot (ammonium nitrate), drain cleaner (sodium hydroxide), liquid fire (sulfuric acid), and camp fuel (hexanes, heptanes), all of which are prohibited under Mississippi Code Annotated section 41 — 29—313(l)(b) (Supp. 2011). Viewing the evidence in the light most favorable to the verdict, we find that the verdict is not contrary to the overwhelming weight of the evidence. This issue is without merit.
IV. Whether the oral sentence or the written sentencing order controls.
¶ 17. As previously noted, at the sentencing hearing, the circuit court orally sentenced Thompson to eight years for Count I and twenty-five years for Count II, to be served consecutively. Four days later and prior to the end of the term of court, the circuit court entered a written order sentencing Thompson to sixteen years for Count I and sixty years for Count II, to run concurrently. Thompson argues that the oral sentence should control.
¶ 18. Thompson cites Leonard v. State, 271 So.2d 445, 447 (Miss.1973), for the proposition that “once a circuit or county court exercises its option to impose a definite sentence it cannot subsequently set that sentence aside and impose a greater sentence.” However, Leonard is distinguishable because Leonard violated the terms of his probation, his probation was revoked, the original suspended sentence was set aside, and a greater sentence was imposed. Id. at 446. In the instant case, Thompson was not on probation. Therefore, the rule announced in Leonard does not apply to the case before us.
¶ 19. Further, this Court has previously held that a written sentencing order controls over a prior oral pronouncement of a sentence:
In Boutwell v. State, 847 So.2d 294, 295 (¶ 6) (Miss.Ct.App.2003), we recognized that the law in most jurisdictions is that when a written judgment of sentence directly conflicts with the sentencing judge’s oral pronouncement of sentence, the oral pronouncement controls. (Citations omitted). However, the Boutwell Court also found that, while this may be *699 the rule in other jurisdictions, our supreme court has held that where there is a direct conflict between the oral and written pronouncements of a sentence, the written order controls. Id. at (¶ 8) (citing Temple v. State, 671 So.2d 58, 59 (Miss.1996) (holding that “in order for a sentence to be valid, a judgment must be entered as of record”)).
Chandler v. State, 27 So.3d 1199,1201 (¶ 8) (Miss.Ct.App.2010). Therefore, we find that the written sentencing order controls. This issue is without merit.
¶ 20. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, POSSESSION OF METHAMPHETAMINE, AND SENTENCE OF SIXTEEN YEARS, AND COUNT II, POSSESSION OF PRECURSOR CHEMICALS WITH INTENT TO MANUFACTURE METHAMPHETAMINE, AND SENTENCE AS A SECOND DRUG OFFENDER AND A HABITUAL OFFENDER OF SIXTY YEARS, TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR REDUCTION OR SUSPENSION OF THE SENTENCE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHO-BA COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR.