# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00419-COA

**JIMMY ALLEN**                                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2022 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/05/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. In the Circuit Court of Yazoo County, Mississippi, Jimmy Allen was tried and convicted of six counts of the statutory rape of his daughter. He was sentenced to serve four concurrent thirty-year terms in the custody of the Mississippi Department of Corrections (MDOC), for the convictions of Counts I, IV, V, and VI. For the convictions of Counts II and III, he was sentenced to two suspended thirty-year terms in the custody of the MDOC. The sentences in Counts II and III were ordered to run consecutively to each other and the other sentences, followed by post-release supervision. Following the denial of his post-trial motions, Allen appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.    Amy[1] lived with her mother Marylin Johnson and her aunt Miranda Johnson until Marylin went to jail in 2018. After her mother's incarceration, Amy went to live with her father Allen. According to Amy's testimony, the sexual abuse began in December 2018. In 2019, Amy confided to her best friend that Allen was sexually abusing her. Amy later testified that she had not told an adult because she feared no one would believe her. Later, however, Amy reported the sexual abuse to her aunt Miranda.

¶3.    After being told of the abuse, Miranda sent Amy's cousin Rashonda Johnson to get Amy and take her to King's Daughters Hospital. Miranda met them there, and Amy underwent a physical examination. The examination showed that her hymen was intact and her anus was normal. There was some bruising in her vaginal area.

¶4.    Jennifer Creel of the Mississippi Department of Child Protection Services was called to the hospital on August 31, 2019, to investigate the allegations that Amy was being sexually abused by her biological father. Creel testified Amy was eleven years old at the time of the abuse, and based upon her birth certificate, Allen was her father. After Creel arrived at the hospital, she was told that Allen had been called and asked to come to the hospital. Despite being informed that his daughter was in the hospital, Allen did not appear.

¶5.    Creel testified that three days after Amy was taken to the hospital, Allen came to her office with some garbage bags full of clothes and "stated that he wanted to turn his daughter over to the state because he did not do what she was saying that he did." Amy was later

_____

[1] We use a pseudonym to protect the victim's identity.

interviewed by Amber Cope, a forensic interviewer with the Child Advocacy Center.

¶6. At trial, Amy told the jury that Allen started raping her when she was in the sixth grade. She testified that Allen raped her in his bedroom when her stepmother and her sons were gone. According to Amy, Allen raped her six times. Amy testified that Allen would insert his penis into her "behind" but never into her vagina and that he always used protection.[2] She testified that he would insert his fingers into her vagina. When Amy would cry, Allen would threaten to "whoop" her because he did not want the neighbors to hear. Amy also testified that after he had raped her, Allen made her bathe in bleach.

¶7. At the conclusion of the State's case, Allen unsuccessfully moved for a directed verdict. Allen then called several witnesses in his defense. The jury found Allen guilty of all six counts charged in the indictment.

## ANALYSIS

### I. Did the trial court fully and fairly instruct the jury as to all the essential elements of the crimes?

¶8. Allen maintains on appeal that the trial court failed to properly instruct the jury as to all the essential elements of the crimes charged in each count of the indictment. Count I of the indictment reads as follows:

> JIMMY ALLEN on or about or between December 1, 2018[,] and December 31, 2018, in Yazoo County, Mississippi, did unlawfully, purposefully, willfully, knowingly and feloniously have sexual intercourse with a child under fourteen (14) years of age when Jimmy Allen was approximately thirty-three (33) years of age, and over twenty-four (24) months older than said child, and

---

[2] A nurse practitioner who treated Allen regarding several sexually transmitted diseases (STDs) testified for the defense. She testified however that the use of a condom during sex would usually prevent the spread of the certain STDs.

said child was not Jimmy Allen's spouse, in violation of Mississippi Code [Annotated section] 97-3-65 (1972), as amended, against the peace and dignity of the State of Mississippi.

The indictment includes five additional counts identical to Count I, with each count alleging different dates of the offense. As of the dates of these crimes, Mississippi Code Annotated section 97-3-65(1)(b) (Supp. 2017)[3] defined the elements of statutory rape as follows:

(1) The crime of statutory rape is committed when:

(b) A person of any age has sexual intercourse with a child who:

(i) Is under the age of fourteen (14) years; and

(ii) Is twenty-four (24) or more months younger than the person; and

(iii) Is not the person's spouse.

¶9. Prior to trial, the State filed its proposed jury instructions as to the elements for each count of the indictment. Inexplicably, the elements instructions filed by the State tracked the language of Mississippi Code Annotated section 97-5-23 (Rev. 2014) regarding gratification of lust rather than statutory rape as charged in Allen's indictment. After the close of the evidence, the State withdrew its erroneous elements instructions and accepted defense instruction D-1, which was given to the jury as "Instruction No. 3" and reads as follows:

The Defendant, Jimmy Allen, has been charged with Six counts of Statutory Rape. If you find that the State fails to prove that Jimmy Allen,

---

[3] While the indictment does not specify the subsection of the statute under which the charges are brought, it clearly charges that the child was under the age of fourteen years, making subsection (b) the applicable statutory provision. This subsection was amended in 2023 to eliminate the need to prove that the child was not the person's spouse. 2023 Miss. Laws ch 483, § 3 (H.B. 995).

4

did between December 1, 2018[,] and December 31, 2018[,] have sexual intercourse with a child under the age of fourteen,

did between February 1, 2019[,] and February 28, 2019[,] have sexual intercourse with a child under the age of fourteen,

did between March 1, 2019[,] and March 31, 2019[,] have sexual intercourse with a child under the age of fourteen,

did between April 1, 2019[,] and April 30, 2019[,] have sexual intercourse with a child under the age of fourteen,

did between May 1, 2019[,] and May 31, 2019[,] have sexual intercourse with a child under the age of fourteen,

did between June 1, 2019[,] and June 30, 2019[,] have sexual intercourse with a child under the age of fourteen,

that Defendant did insert his penis into the genitals of a child under the age of fourteen then you shall find the Defendant Not Guilty.

¶10. Allen argues that some of the essential elements of the crime of statutory rape under section 97-3-65(1)(b) were excluded from the elements instruction at trial, specifically, findings that the child is twenty-four or more months younger than the accused and that the child is not Allen's spouse. Allen contends that the omission of these elements is plain error, citing *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013) ("Although Bolton did not object to the jury instruction, the 'failure to instruct the jury on the essential elements of the crime is plain error.'").

¶11. Allen further argues that the circuit court committed plain error when it did not instruct the jury that it must find that Allen committed the crimes in the necessary venue, an essential element of the crimes. *See Chesney v. State*, 165 So. 3d 498, 503 (¶11) (Miss. Ct. App. 2015) ("Given that venue is 'essential' to a criminal prosecution, and that venue may

5

be raised for the first time on appeal, we find that such an obvious omission is fatal and requires reversal." (citing *Rogers v. State*, 95 So. 3d 623, 632 (¶30) (Miss. 2012))). Allen contends that because the evidence was insufficient to prove venue beyond a reasonable doubt, he is entitled to a judgment of acquittal.

¶12.    The State argues that since Allen submitted the elements instruction to the trial court, he has waived his claims that the jury instructions were inadequate. According to the State, "[d]espite the waiver, . . . a defendant's inviting an erroneous elements instruction is not reversible." The State cites *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018), where the supreme court held:

> It is axiomatic that "a defendant cannot complain on appeal of alleged errors invited or induced by himself." *Galloway v. State*, 122 So. 3d 614, 645 [(¶87)] (Miss. 2013); *O'Connor v. State*, 120 So. 3d 390, 397 [(¶17)] (Miss. 2013); *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1988). Further, "a defendant cannot complain of an instruction which he, not the state, requested." *Harris v. State*, 861 So. 2d 1003, 1015 [(¶24)] (Miss. 2003); *Buford v. State*, 372 So. 2d 254, 256 (Miss. 1979).

¶13.    The State's argument is misplaced. In *Jennings v. State*, 311 So. 3d 712, 717-18 (¶14) (Miss. Ct. App. 2021), this Court explained:

> "[I]nstructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object at trial." [*Hodges v. State*, 285 So. 3d 711, 720] (¶36) [(Miss. Ct. App. 2019)] (quoting *Chesney v. State*, 165 So. 3d 498, 503 (¶10) (Miss. Ct. App. 2015)) (citing *Pollard v. State*, 932 So. 2d 82, 87 (¶11) (Miss. Ct. App. 2006) ("The trial court committed plain error by adopting an instruction that did not fully instruct the jury on the elements of the crime; thus, the procedural bar based upon counsel's failure to object does not apply.")). We therefore review this issue for plain error. *Id*.; *Bolton v. State*, 113 So. 3d 542, 544 (¶4) (Miss. 2013) ("The failure to instruct the jury on the essential elements of the crime is plain error.").

6

¶14. In *Jennings*, we found that the invited-error doctrine did not apply because defense counsel and the trial court apparently mistakenly believed the instruction properly instructed the jury on the elements of the crime. *Id*. at 719 (¶19). The same is true here. Further, like *Jennings*, the "elements instruction" given in this case was the only instruction that purported to set forth the elements of the charged crimes. *Id*. at 718 (¶15).[4]

¶15. The jury instructions in this case failed to properly instruct the jury as to the State's burden of proof and the essential elements of each of the crimes. First, the jury was not instructed that the State must prove all of the elements of each offense beyond a reasonable doubt. Second, Instruction No. 3 did not inform the jury of the elements the State was required to prove beyond a reasonable doubt in order for the jury to return guilty verdicts; it only instructed the jury that it must return verdicts of "not guilty" if the State failed to prove certain elements. Additionally, the jury was not instructed that the State had to prove beyond a reasonable doubt that Allen had sexual intercourse with Amy between the dates set forth in each count of the indictment. Nor was the jury properly instructed that the State must prove beyond a reasonable doubt that Amy was younger than fourteen years old at the time of each of the offenses. Likewise, the jury was not instructed that the State had to prove beyond a reasonable doubt that Allen was more than twenty-four months older than Amy. Finally, the jury was not instructed that the State must prove beyond a reasonable doubt that each of the offenses occurred in Yazoo County, Mississippi.

---

[4] We note that jury instructions "are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012).

¶16. This Court concluded in *Jennings*, 311 So. 3d at 719 (¶21):

> Because our precedent is clear that "it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element," we reverse and remand for a new trial on this issue. *Harrell* [*v. State*], 134 So. 3d [266,] 275 (¶30) (Miss. Ct. App. 2021); *see also Bolton*, 113 So. 3d at 544 (¶4); *Hodges*, 285 So. 3d at 722 (¶42).

Accordingly, we must reverse and remand this matter for a new trial.[5]

**II.    Was the evidence of venue legally insufficient to support the verdict?**

¶17. The Mississippi Constitution provides that any person facing criminal charges must be tried in the "county where the offense was committed." Miss. Const. art. 3, § 26. Allen argues that the evidence was insufficient to prove that the crime occurred in Yazoo County. As a result, Allen contends that the failure to prove venue beyond a reasonable doubt requires a reversal of his conviction and a judgment of acquittal. To support his contention, he cites *Rogers v. State*, 95 So. 3d 623, 630 (¶23) (Miss. 2012) ("[P]roof of venue is an essential part of criminal prosecution, and the State bears the burden of proving venue beyond a reasonable doubt.").

¶18. As noted above, the jury was not asked to consider whether the State had proved that each of the offenses occurred in Yazoo County. Because we are reversing and remanding this matter for a new trial, it is not necessary for us to determine whether there was legally sufficient proof of venue. Even if the evidence were found to be insufficient as to venue, the

---

[5] Because we reverse and remand this case for a new trial, the other issues raised by Allen (*Batson* violation, ineffective assistance of counsel, and evidentiary rulings) are moot. *Jennings*, 311 So. 3d at 720 (¶22).

proper remedy would be to remand for a new trial. *See Smith v. United States*, 599 U.S. 236, 254 (2023); *Clark v. State*, 92 So. 2d 452, 453 (Miss. 1957).

## CONCLUSION

¶19.    Because we find that the jury was not properly instructed as to the State's burden of proof and the elements of each of the offenses, we reverse Allen's convictions and remand the matter to the trial court for a new trial.

¶20.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**